**United States District Court**
For the Northern District of California

1

2

3

4

5                                    **NOT FOR PUBLICATION**

6                         IN THE UNITED STATES DISTRICT COURT

7                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   LINDA COELHO,                                    No.  C 10-02102 JSW

10            Plaintiff,                             **ORDER DENYING PLAINTIFF'S**
                                                     **MOTION FOR SUMMARY**
11    v.                                             **JUDGMENT AND GRANTING**
                                                     **DEFENDANT'S CROSS-MOTION**
12   MICHAEL J. ASTRUE, Commissioner of              **FOR SUMMARY JUDGMENT**
     Social Security,
13
              Defendant.
14   _____/

15

16                                    **INTRODUCTION**

17        Now before the Court is the motion for summary judgment filed by Plaintiff Linda

18   Marie Coelho ("Coelho") and the cross-motion for summary judgment filed by the

19   Commissioner of Social Security (the "Commissioner").  Pursuant to Civil Local Rule 16-5, the

20   motions have been submitted on the papers without oral argument.  Having carefully reviewed

21   the administrative record, considered the parties' papers, and relevant authority, the Court

22   HEREBY DENIES Coelho's motion for summary judgment and GRANTS the Commissioner's

23   cross-motion for summary judgment.

24                                  **STATEMENT OF FACTS**

25        Coelho brings this action pursuant to 42 U.S.C. § 405(g) and seeks judicial review of the

26   Commissioner's decision on September 19, 2007, following a hearing, to deny her claim for

27   supplemental security income benefits.  At the time of this decision Coelho was forty-seven

28   years old, had ten years of education, and had no past relevant work history.  (Administrative

United States District Court
For the Northern District of California

1    Record ("AR") at 209.)  Coelho bases her claim of disability on cervical joint disease with

2    radicular pain to the right shoulder, wrist tenosynovitis, and depression.  (*Id.* at 173.)

3           Coelho received regular treatment from the Native American Health Center (the

4    "NAHC") starting in 1994.  (*See id.* at 127).  Dr. Barbara Ramsey was Coelho's primary care

5    physician at the NAHC.  (*Id.* at 294.)

6           On January 7, 2004, Dr. Federico Castro-Moure at the Alameda County Medical Center

7    examined Coelho for chronic cervical spine pain.  (*Id.* at 310, 362-63.)  Dr. Castro-Moure

8    diagnosed Coelho with radiculopathy and offered surgical decompression as treatment, but

9    Coelho declined.  (*Id.*)

10          From October 2004 to December 2004, Coelho was in and out of the emergency room

11   because of neck pain associated with a motor vehicle accident and complaints of wrist pain,

12   especially in her left wrist.  (*See id.* at 236-50.)  An X-ray following the accident in October

13   2004 revealed "marked degenerative changes" in Coelho's cervical spine.  (*Id.* at 238.)  In

14   November 2004, Dr. Dan Merges diagnosed Coelho with chronic tenosynovitis in her left wrist.

15   (*Id.* at 243.)

16          On March 1, 2005, Dr. Ramsey evaluated Coelho's physical and mental capacities.  (*Id.*

17   at 296-98.)  Dr. Ramsey found Coelho could sit and stand and/or walk up to two hours a day,

18   could occasionally climb, balance, stoop, and reach, and could never reach above her shoulders,

19   kneel, crouch, or crawl.  (*Id.* at 297-98.)  Dr. Ramsey also found that Coelho's tenosynovitis,

20   disc disease, and cervical radiculopathy also restricted her abilities to perform repetitive

21   motions with her hands and feet.  (*Id.* at 296.)  Dr. Ramsey stated that Coelho could not

22   complete tasks in a work setting, and she stated that any additional stressors would "aggravate"

23   Coelho's pain and mental health.  (*Id.* at 298.)

24          On April 6, 2005, a clinic report from Alameda County Medical Center listed Coelho's

25   grip strength to be 4+/5.  (*Id.* at 359.)  Later that month, the NAHC advised Coelho to have

26   surgery, but she declined.  (*Id.* at 288.)

27          On April 19, 2005, state agency physician B. Camille Williams reviewed Coelho's

28   medical records and assessed her physical capacity.  (*See id.* at 251-58.)  Based on this review,

United States District Court

For the Northern District of California

1    Dr. Williams stated that Coelho could occasionally lift and/or carry ten pounds, frequently lift

2    and/or carry less than ten pounds, sit and stand and/or walk about six hours out of an eight hour

3    workday, and perform unlimited pushing and/or pulling.  (*See id.* at 252.)  Dr. Williams noted

4    no postural limitations on Coelho's abilities to climb, balance, stoop, kneel, crouch or crawl, but

5    she noted Coelho's limited abilities in reaching, handling and fingering.  (*Id.* at 253-54.)  Dr.

6    Williams also stated that her findings did not significantly differ from that of any treating source

7    opinions on Coelho's limitations.  (*Id.* at 257.)

8        On November 8, 2005, NAHC nurse practitioner Rhonda Ramirez prepared a statement

9    on Coelho's physical abilities.  (*See id.* at 278-79.)  Nurse Ramirez noted Coelho's cervical

10   degeneration, her inability to use her right hand normally, and her chronic hand and wrist pain

11   due to tenosynovitis.  (*Id.*)  Nurse Ramirez stated that Coelho could lift and/or carry less than

12   ten pounds, stand and/or walk for at least two hours out of an eight hour workday, and climb

13   and balance occasionally, and she stated that Coelho could never stoop, kneel, crouch, or crawl.

14   (*Id.*)  Nurse Ramirez stated that Coelho's tenosynovitis limited her abilities for reaching,

15   handling, fingering, and feeling, and she stated that Coelho should alternate every hour between

16   sitting and standing.  (*Id.* at 279.)  On February 2, 2007, Nurse Ramirez reiterated her

17   evaluation in a statement that Dr. Bhrett Lash also signed.  (*Id.* at 364-65.)

18       On May 24, 2007, Coelho testified at the hearing regarding her application for benefits.

19   (*Id.* at 439.)  At this hearing, Coelho described her neck, knee, and wrist pain, including her

20   inability to "pick[] up . . . a little pair of jeans" with her right wrist.  (*Id.* at 442-65).  Vocational

21   expert ("VE") Steve Davis also testified at the hearing.  (*Id.* at 469-74.)  The Administrative

22   Law Judge ("ALJ") posed a hypothetical to the VE that assumed several factors, such as a

23   capacity for light work, and the ALJ asked the VE whether any jobs met these hypothetical

24   restrictions.  (*Id.* at 469-70.)  The VE testified that several occupations, including a table worker

25   position, satisfied the ALJ's hypothetical.  (*Id.* at 470-71.)

26       On September 19, 2007, the ALJ issued his decision in Coelho's case.  (*Id.* at 134-41.)

27   In his five-step sequential evaluation of disability, the ALJ found Coelho had not engaged in

28   substantial gainful activity since December 9, 2004.  (*Id.* at 135.)  He further found Coelho's

United States District Court

For the Northern District of California

1   medical conditions to be sufficiently "severe" to affect her ability to perform basic work

2   activities.  (*Id.*)  However, the ALJ found Coelho did not meet the criteria for impairment

3   listings 1.02 or 1.04.  (AR at 135-36.)  Proceeding with the sequential evaluation, the ALJ

4   largely credited the medical opinion of the nonexamining state agency physician to determine

5   Coelho's residual functional capacity ("RFC").  (AR at 139.)  The fourth step of the evaluation

6   was not applicable to Coelho's case, as she had no relevant work history.  (*Id.*)  In the fifth step,

7   the ALJ held that Coelho was not disabled because her RFC enabled her to adjust successfully

8   to a significant number of jobs in the national economy.  (*Id.* at 140.)

9         The Social Security Appeals Council denied Coelho's request to review the ALJ's

10  decision.  (*Id.* at 5.)  Coelho appealed to this Court on May 17, 2011.  (Docket No. 1.)

11        In support of her motion, Coelho raises six arguments.  First, she argues the ALJ erred

12  when he rejected the medical opinions of her treating physicians without providing clear and

13  convincing reasons supported by substantial evidence.  (Br. at 9-12.)  Second, she argues the

14  ALJ erred when he gave greater weight to the medical opinion of the nonexamining physician,

15  because this opinion alone did not constitute substantial evidence sufficient to justify rejecting

16  her treating physicians' opinions.  (*Id.* at 12-15.)  Third, she argues the ALJ erred, because he

17  failed to provide clear and convincing reasons to discredit her pain testimony.  (*Id.* at 15-17.)

18  Fourth, she argues the ALJ erred when he found she did not meet or equal listing 1.04A.  (*Id.* at

19  17-18.)  Fifth, she argues the ALJ erred when he determined her RFC, because this finding was

20  not supported by substantial evidence.  (*Id.* at 18-19.)  Sixth, she argues the ALJ erred, because

21  he relied on jobs identified by the VE that did not match her RFC.  (*Id.* at 19-21.)

22        The Court shall address additional facts as necessary in the remainder of this Order.

23                                          **ANALYSIS**

24  **A.    Standard of Review.**

25        A federal district court may disturb the Commissioner's final decision only if the

26  decision contains legal error or is not supported by substantial evidence.  *See* 42 U.S.C.

27  § 405(g).  "Substantial evidence means more than a mere scintilla, but less than a

28  preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

4

1   support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine

2   whether substantial evidence exists, the reviewing court looks at the administrative record as a

3   whole, considering both evidence that supports and undermines the ALJ's findings. *See id.*

4   "[W]here the evidence is susceptible to more than one rational interpretation," the reviewing

5   court must uphold the ALJ's decision. *Id.* at 1039-40.

6   **B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

7          Disability is "the inability to engage in any substantial gainful activity" because of a

8   medical impairment which can result in death or "which has lasted or can be expected to last for

9   a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a

10  five-step sequential evaluation process to determine whether a plaintiff is disabled. *See* 20

11  C.F.R. § 404.1520. During the first four steps of this sequence, the claimant bears the burden of

12  proof to demonstrate disability, but the burden shifts to the Commissioner at step five "to show

13  that the claimant can do other kinds of work." *See Valentine v. Comm'r Soc. Sec. Admin.*, 574

14  F.3d 685, 689 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

15         The five-step analysis proceeds as follows. First, the claimant must not be engaged in

16  substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). Second, the claimant must have a

17  severe impairment. *Id.* § 404.1520(c). Third, if the claimant's impairment meets the duration

18  requirement and meets or equals an impairment listed in Appendix 1 to the regulation (a list of

19  impairments presumed severe enough to preclude work), the claimant will be found disabled

20  without consideration of age, education, or work experience. *See id.* § 404.1520(d). Fourth, if

21  the claimant fails to satisfy step three, the ALJ will assess and make a finding on the claimant's

22  RFC. *Id.* § 404.1520(e). The RFC measurement describes the most an individual can do

23  despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past

24  relevant work, the claimant will not be found disabled; if not, the ALJ proceeds to step five.

25  *See id.* § 404.1520(f). Fifth, if the claimant is able to adjust to other work in the national

26  economy, the claimant will not be found disabled. *Id.* § 404.1520(g)(1).

27

28

**United States District Court**
For the Northern District of California

5

**C.      The ALJ Assessed the Entire Record to Provide Clear and Convincing Reasons for Finding Coelho's Pain Testimony Not Credible.**

The Court first evaluates the ALJ's assessment of Coelho's credibility.  Coelho argues the ALJ erred, because he failed to consider the entire record and to provide a clear and convincing reason for discounting her credibility.  (Br. at 15-17.)  If a claimant has produced objective medical evidence that could reasonably support the pain or symptoms of her underlying impairment, and there is no evidence of malingering, the ALJ may only reject a claimant's testimony about the severity of her symptoms for clear and convincing reasons.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

To make his credibility determination, the ALJ may consider: (1) inconsistencies on the record concerning the claimant's symptoms; (2) unexplained failure to seek treatment; and (3) the claimant's daily activities.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  The ALJ must consider the entire record, but the claimant's statements regarding pain or other symptoms "shall not alone be conclusive evidence of disability."  *See* 42 U.S.C. § 423(d)(5)(A).

The ALJ provided clear and convincing reasons for finding Coelho not credible.  An ALJ may consider inconsistencies in a claimant's testimony when evaluating the testimony's credibility, which the ALJ did in this case.  *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  For instance, while Coelho complained of debilitating pain in her right wrist, the ALJ noted that an objective assessment of Coelho's right hand function indicated "essentially normal" right grip strength.  (AR at 139, 359.)  Moreover, Coelho's counsel acknowledged the lack of objective diagnostic evidence for her right wrist pain.  (*See id.* at 463-65.)  The ALJ observed that Coelho did not take pain medication on the date of her hearing, and, in light of the grip test, he discredited Coelho's testimony that she could not pick up a pair of jeans.  (*See id.* at 139.)

United States District Court
For the Northern District of California

6

<div style="float:left">United States District Court<br>For the Northern District of California</div>

1   The ALJ also identified instances in the record where Coelho did not adequately explain

2   her decision to decline surgical treatment.  Under *Smolen*, a claimant's unexplained failure to

3   seek treatment is a factor the ALJ may consider in a credibility determination.  *See* 80 F.3d at

4   1284.  Coelho's neurosurgeon recommended neck surgery, and she claimed she declined this

5   treatment, because the doctor did not "guarantee" it would relieve her pain long-term.  (*See id.*

6   at 362-63, 444.)  However, she also admitted that physical therapy "didn't seem to get

7   anywhere" and did not help her neck pain.  (*See id.* at 443-44.)  The ALJ also noted that, other

8   than narcotic pain medication, Coelho declined further treatment for her wrist symptoms.  (AR

9   at 138-39.)  Indeed, the record reflects Coelho's overall reluctance to have surgery, in spite of a

10  recommendation from her primary treatment facility to do so.  (*See id.* at 288, 310, 362-63.)

11  The ALJ was permitted to draw the inference that Coelho's complaints were not as great as she

12  claimed because Coelho "did not seek an aggressive treatment program" for her pain.  *See*

13  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

14      Finally, the ALJ found Coelho's testimony on her daily routine "inconsistent with the

15  degree of functional limitation" she alleged.  (AR at 138.)  The ALJ may consider a claimant's

16  daily activities as part of his finding on the credibility of pain testimony.  *See Smolen*, 80 F.3d

17  at 1284.  While a claimant need not be "utterly incapacitated" to be disabled under the Social

18  Security Act, "if, despite his claims of pain, a claimant is able to perform household chores and

19  other activities that involve many of the same physical tasks as to a particular type of job, it

20  would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the

21  claimant from working."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Here, the ALJ

22  reasonably concluded Coelho's testimony of her routine was "less than persuasive" after he

23  listed the range of activities Coelho testified she performed daily, including accompanying her

24  children to school, performing some household chores, and taking care of her personal hygiene.

25  (*See* AR at 139.)

26      The ALJ identified specific evidence undermining Coelho's complaints of pain, and he

27  offered clear and convincing reasons for finding her pain testimony not credible.

28

7

**United States District Court**
For the Northern District of California

**D.      The ALJ Properly Relied on the Nonexamining Physician's Opinion.**

Coelho argues the ALJ did not provide a clear and convincing reason supported by substantial evidence to dismiss her treating physicians' opinions.  (Br. at 9-12.)  Coelho also argues that the ALJ erred when he gave greater weight to the nonexamining physician's opinion because this opinion by itself could not constitute substantial evidence and lacked support in the record.  (*Id.* at 12-15.)  Because the standard used to resolve these issues is similar, the Court analyzes these arguments together.

**1.      The ALJ Properly Rejected the Treating Physicians' Opinions With a Specific and Legitimate Reason.**

Where, as here, the medical opinions are controverted, the ALJ may reject a treating physician's opinion if he sets forth "specific and legitimate reasons" supported by substantial evidence in the record.[1]  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). A treating physician's opinions are generally entitled to more weight.  *See* 20 C.F.R. § 404.1527(d)(2).  However, the ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities."  *Andrews*, 53 F.3d at 1039.  The ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Bray*, 554 F.3d at 1228 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

Here, the ALJ met his burden of providing a specific, legitimate reason to reject the treating physicians' opinions when he set out in detail, interpreted, and made findings about the relevant medical evidence.  *See Magallanes*, 881 F.2d at 751.  The ALJ rejected the treating

---

[1]      Dr. Ramsey, Nurse Ramirez, and Dr. Lash agreed that Coelho could stand and/or walk for approximately two hours per workday, whereas Dr. Williams stated that Coelho could stand and/or walk for six hours per workday.  (*See* AR at 252, 278, 296.)  The treating and nonexamining physicians also disagreed about Coelho's abilities to sit, kneel, crouch, and crawl.  (*See id.* at 252-53, 279, 296-97.)

1   physicians' opinions after he gave a full summary of the objective evidence on Coelho's

2   cervical spine condition: an MRI showing stenosis in 2002; an X-ray showing degenerative

3   changes in 2004; and an MRI showing disc narrowing, dessication, and posterior disc bulging,

4   but normal cord signal.  (AR at 136-37.)  The ALJ acknowledged Coelho "clearly has an

5   impairment of the cervical spine."  However, he found the treating physicians' assessment of

6   Coelho's physical limitations to be "extreme" and not well-supported in view of the objective

7   evidence" (*Id.* at 137-38.)  A lack of supporting objective evidence is a specific and legitimate

8   reason for rejecting a treating physician's opinion.  *See Batson v. Comm'r of Soc. Sec. Admin.*,

9   359 F.3d 1190, 1195 (9th Cir. 2004).

10          The ALJ observed that the treating physician did not explain why Coelho's cervical

11   condition resulted in "right knee dysfunction."  (AR at 137, 296.)  The ALJ also concluded that

12   the mental health assessment, which stated it was "unlikely that [Coelho] would be able to

13   work," did not explain how psychological or physical conditions limited Coelho's ability to

14   function.  (*Id.* at 138, 266.)  Additionally, the general lack of objective clinical evidence in

15   Coelho's treatment records from the NAHC supports the ALJ's rationale for discounting the

16   treating physicians' opinions.  Many of these NAHC records contain self-reports of symptoms

17   under the subjective "S" heading and little to no assessment under the objective "O" heading.

18   (*See id.* at 283, 286, 289, 312, 314, 315, 318, 325, 326.)  As discussed above, the ALJ properly

19   discounted Coelho's credibility, and "[a]n ALJ may reject a treating physician's opinion if it is

20   based 'to a large extent' on a claimant's self-reports that have been properly discounted as

21   incredible."  *See Tommasetti*, 533 F.3d at 1041 (quoting *Morgan*, 169 F.3d at 602).

22          Coelho contends that the ALJ had a duty to develop the record in her case to understand

23   the basis for the treating physicians' opinions.  (*See* Br. at 11-12.)  The ALJ has a duty to

24   develop the record if he needs to know the basis of a doctor's opinions to evaluate them.

25   *Smolen*, 80 F.3d at 1288.  In the instant case, the treating physicians listed Coelho's cervical

26   spine conditions, tenosynovitis, and arthritis as the basis for their findings.  (*See* AR at 278-79,

27   296-98.)  As a result of these explanations, the ALJ did not need to know the basis of the

28

9

1   treating physicians' opinions; therefore, the ALJ did not have a duty to develop the record

2   further.

3        The ALJ provided a specific, legitimate reason supported by substantial evidence for

4   rejecting the treating physicians' opinions when he found a lack of supporting objective

5   evidence in Coelho's case.  This finding was well within the ALJ's authority as "the final

6   arbiter with respect to resolving ambiguities in the medical evidence."  *See Tommasetti*, 533

7   F.3d at 1041.

8              **2.      The ALJ Gave a Specific and Legitimate Reason for Relying on the
                         Nonexamining Physician's Opinion.**

9

10       Coelho also argues the ALJ erred when he relied on the nonexamining physician's

11  opinion, because this opinion alone was not substantial evidence that justified rejecting her

12  treating physicians' opinions.  (Br. at 12.)  To reject a treating physician's opinion and rely on

13  the opinion of a nonexamining physician, the ALJ must give specific, legitimate reasons based

14  on substantial evidence in the record.  *See Magallanes*, 881 F.2d at 752-53.  The nonexamining

15  physician's opinion "cannot by itself constitute substantial evidence that justifies the rejection

16  of the opinion of . . . a treating physician."  *Lester*, 81 F.3d at 831.

17       For the reasons explained above, the ALJ provided a specific, legitimate reason for

18  relying on the nonexamining physician's opinion when he found that the treating physicians'

19  opinions were not well-supported by objective medical evidence.  *See Magallanes*, 881 F.2d at

20  752-53.  Thus, ALJ relied on the nonexamining physician's opinion *because* he found that

21  objective medical evidence did not support the treating physicians' opinions.  The ALJ also

22  relied on that opinion because he found Coelho's allegations of pain not credible.  (*See* AR at

23  138-39.)

24       Coelho contends the ALJ could not give weight to the nonexamining physician's

25  opinion because it was unsupported by record evidence, was inconsistent with the record, and

26  was unexplained.  (Br. at 13-14; Reply Br. at 5-6.)  Under SSR 96-6p, "the opinions of State

27  agency medical" physicians "can be given weight only insofar as they are supported by

28  evidence in the case record," considering factors such as consistency with the record and

*United States District Court*
For the Northern District of California

10

United States District Court

For the Northern District of California

1   explanation for the opinion.  At the same time, SSR 96-6p provides that the ALJ "must also

2   consider *all* other factors that could have a bearing on the weight to which an opinion is entitled

3   . . ." (emphasis added).  Here, the lack of objective medical evidence in support of the treating

4   physicians' assessment and the ALJ's adverse credibility finding are factors that substantially

5   weigh in favor of reliance on the nonexamining physician's opinion in Coelho's case.

6        Coelho also relies on *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984) to support this

7   argument.  In *Gallant*, the court held that the ALJ improperly rejected the concurring opinions

8   of eleven treating physicians in favor of two nonexamining physicians' reports.  753 F.2d at

9   1456.  However, unlike in Coelho's case, the record in *Gallant* was "replete with objective

10  clinical findings" that supported the claimant's allegations of pain.  *Id.* at 1455.  Moreover, the

11  *Gallant* court came to its conclusion in the context of assessing whether substantial evidence

12  supported the ALJ's conclusion that the claimant could perform light and sedentary work, not in

13  an overall finding that credited either the treating or nonexamining physicians' opinions.  *See*

14  *id.* at 1452-56.

15       The lack of objective medical evidence in support of the treating physicians' opinions is

16  a specific, legitimate reason, supported by substantial evidence, which enabled the ALJ to reject

17  the treating physicians' opinions and to rely on the nonexamining physician's opinion.

18  **E.      The ALJ Properly Found that Coelho Did Not Meet or Equal Listing 1.04A.**

19       Coelho also argues the ALJ erred in finding she did not meet or equal Listing 1.04A,

20  because the ALJ did not consider her impairments in combination to make this finding.  (Br. at

21  17-18; Reply Br. at 7-8.)  If a claimant has an impairment that (1) meets or equals one listed in

22  Appendix 1 and (2) meets the duration requirement, the claimant will be found disabled.  20

23  C.F.R. § 416.920(d).  To meet a listing, the claimant must demonstrate the impairment "satisfies

24  all of the criteria of that listing. . . ."  *See id.* § 404.1525(c)(3).  To equal a listing, the claimant's

25  impairment must be "at least equal in severity and duration to the criteria of any listed

26  impairment."  *See id.* § 404.1526(a).

27       "Equivalence is determined on the basis of a comparison between the symptoms, signs

28  and laboratory findings about the claimant's impairment as evidenced by the medical records

1   with the medical criteria shown with the listed impairment." *Marcia v. Sullivan*, 900 F.2d 172,

2   176 (9th Cir. 1990) (citation and internal quotation marks omitted).  A claimaint's statements

3   (or statements made by another person) of symptoms are insufficient to establish an impairment.

4   *See* 20 C.F.R. § 416.928(a).  When a claimant has multiple impairments, none of which meet a

5   listing, the ALJ considers whether the combination of impairments equals a listing.  *See id.* §

6   416.926(b)(3).  However, "[a]n ALJ is not required to discuss the combined effects of a

7   claimant's impairments . . . in an equivalency determination, unless the claimant presents

8   evidence in an effort to establish equivalence."  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.

9   2005).

10         Listing 1.04A requires "[e]vidence of nerve root compression characterized by neuro-

11   anatomic distribution of pain, limitation of motion of the spine, [and] motor loss (atrophy with

12   associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss."  20

13   C.F.R. Part 404, Subpt. P, App. 1, § 1.04A.  With regard to meeting Listing 1.04A, the ALJ

14   properly found that Coelho did not satisfy *all* of the requirements because subjective accounts

15   of numbness, without any objective medical findings, compose the majority of her evidence for

16   sensory loss.  (*See* AR at 136, 233, 281, 307, 311, 359).  Coelho also attempts to use a doctor's

17   report, which states that Coelho was referred to the clinic in part because of numbness, as

18   objective medical evidence of numbness, when the report in fact contains no finding on sensory

19   loss.  (*See* Br. at 18; AR at 310.)  Because Coelho did not demonstrate sensory loss, and

20   because she offered no evidence of reflex loss, the ALJ properly concluded that she did not

21   meet Listing 1.04A.

22         The Court further holds that the ALJ did not err when he did not discuss the combined

23   effects of Coelho's impairments to determine she did not equal Listing 1.04A.  If a claimant

24   presents evidence to demonstrate equivalence to a listing, the ALJ must discuss the claimant's

25   impairments in combination to make his finding.  *See Burch*, 400 F.3d at 683.  However, the

26   ALJ need not discuss the combined effects of a claimant's impairments if the claimant offers

27   "no theory, plausible or otherwise" as to whether his impairments could combine to equal a

28   listing.  *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  Here, Coelho claims she

*United States District Court*
*For the Northern District of California*

United States District Court

For the Northern District of California

1   presented evidence sufficient to establish equivalency and that the ALJ was therefore required

2   to provide an adequate explanation as to whether she equaled Listing 1.04A.  (*See* Reply Br. at

3   8; AR at 211.)  The evidence she presents, however, addresses the individual criteria required to

4   meet Listing 1.04A, and does not contain any record detailing how the combined effects of her

5   impairments could equal this listing.  (*See* AR at 211.)  Thus, Coelho offers no theory as to how

6   her other impairments, such as her left wrist tenosynovitis or depression, could combine to

7   equal the spine disorder under Listing 1.04A.  As a result of this deficiency, the ALJ was not

8   required to discuss Coelho's impairments in combination in his equivalency finding. *See Apfel*,

9   236 F.3d at 514.

10          The ALJ properly found that Coelho did not meet Listing 1.04A, because Coelho did not

11  demonstrate sensory or reflex loss.  Additionally, the ALJ did not need to evaluate the

12  combined effects of Coelho's impairments in his equivalency finding, because Coelho did not

13  present any theory on how her impairments, in combination, could equal Listing 1.04A.

14  **F.      The ALJ's RFC Finding Is Supported by Substantial Evidence.**

15          Coelho argues that the ALJ's determination of her RFC is not supported by substantial

16  evidence.  (Br. at 18-19.)  "It is clear that it is the responsibility of the ALJ, not the claimant's

17  physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049

18  (9th Cir. 2001).  RFC is the "maximum degree to which the individual retains the capacity for

19  sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt.

20  P, App. 2, § 200.00(c).  The ALJ determines the RFC "based on all of the relevant medical and

21  other evidence" and considers statements from medical sources, "whether or not they are based

22  on formal medical examinations." *See* 20 C.F.R. § 404.1545(a)(3).  In assessing the RFC, the

23  "claimant's credibility becomes important . . . ." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147

24  (9th Cir. 2001).

25          Here, the ALJ found Coelho had the RFC to perform "a limited range of light work

26  activity" and he restricted her to "simple repetitive" tasks.  (AR at 139.)  Coelho claims that this

27  finding is not supported by substantial evidence, because the nonexamining physician's opinion

28  alone formed the basis for the RFC.  (Br. at 18-19.)  The ALJ, however, based his finding on a

United States District Court

For the Northern District of California

1    thorough evaluation of the record, and he did not adopt the nonexamining physician's opinion

2    in its entirety.  (*See* AR at 136-39.)  Rather, the ALJ weighed all of the evidence and added

3    "some modifications" to the RFC, such as limiting Coelho to occasional non-forceful

4    pushing/pulling, whereas the nonexamining physician had stated Coelho could perform

5    unlimited pushing/pulling.  (*See id.* at 139, 252.)  Additionally, the ALJ incorporated the

6    adverse credibility finding, including inconsistencies in Coelho's testimony, in his RFC

7    calculation.  (*See id.* at 139.)  Therefore, substantial evidence did support the ALJ's RFC

8    finding.

9          Coelho claims the ALJ's "mild" mental RFC assessment does not encapsulate the

10   nonexamining physician's assessment of "moderate limitations."  (Reply Br. at 9.)  She states:

11   "It makes no sense that the ALJ adopted a moderate impairment for his listings analysis, but

12   then ignored the moderate limitations in determining his RFC, and created his own limitation of

13   mild."  (*Id.*)  Her argument has no support in the record or in case law.  First, the ALJ's opinion

14   does not contain any statement expressly adopting either a mild or moderate mental RFC.

15   Second, the ALJ's finding on Coelho's abilities to maintain concentration, persistence, or pace

16   represented a middle ground approach to the conflicting evidence on Coelho's mental

17   capabilities.  (*See* AR at 136.)  The ALJ is responsible for "resolving conflicts in medical

18   testimony" and "is likewise responsible for resolving ambiguities."  *Magallanes*, 881 F.2d at

19   750 (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  The psychologist opined it

20   was unlikely Coelho could work at all due to her psychological condition, whereas the

21   nonexamining physician found only moderate limitations in Coelho's mental health; thus, the

22   ALJ's "mild" restrictions conclusion reconciled this difference.  (*See* AR at 136, 138.)  Finally,

23   by restricting Coelho to simple repetitive tasks, the ALJ accounted for any moderate mental

24   limitations Coelho may have had.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th

25   Cir. 2008) (holding the ALJ properly translated the claimant's moderate mental limitations into

26   restriction to simple tasks).

27

28

14

1    Because substantial evidence supported the ALJ's finding, and because the ALJ's

2 mental health finding addressed any potential moderate limitations, the ALJ did not legally err

3 in calculating Coelho's RFC.

4    **G.    The ALJ Committed Harmless Error When He Posed a Hypothetical to the**
        **Vocational Expert That Improperly Assumed Coelho's Capacity for Light Work.**

5

6    Finally, Coelho argues that the ALJ posed a hypothetical to the VE that misrepresented

7 her RFC, and that the ALJ erroneously relied on VE testimony that identified jobs that did not

8 accommodate her RFC.  (Br. at 19-21.)  At the fifth step, the ALJ may meet his burden of

9 showing the claimant can engage in other substantial gainful activity by "propounding to a

10 vocational expert a hypothetical that reflects all the claimant's limitations."  *See Roberts v.*

11 *Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 756).  "[T]he

12 hypothetical posed must include 'all of the claimant's functional limitations, both physical and

13 mental' supported by the record."  *Thomas*, 278 F.3d at 956 (quoting *Flores v. Shalala*, 49 F.3d

14 562, 570-71 (9th Cir. 1995)).  If, based on the VE's response, there are a significant number of

15 jobs that the claimant could perform in one or more occupations, then the claimant is not

16 disabled.  *See* 20 C.F.R. § 404.1566(b).

17    The Court finds the ALJ legally erred when he asked the VE to assume "a capacity for

18 light work."  (*See* AR at 469.)  Light work " involves lifting no more than 20 pounds at a time

19 with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

20 However, the ALJ's RFC finding limited Coelho to lifting/carrying only 10 pounds occasionally

21 and less than 10 pounds frequently.  (AR at 139.)  The error in this assumption resembles the

22 error the court found in *Gallant*, where the hypothetical given to the VE failed to include a

23 limitation on the claimant's exertional capabilities.  *See* 753 F.2d at 1456.  The court explained,

24 "[u]nless there is record evidence to adequately support" a hypothetical assumption, "the

25 opinion expressed by the vocational expert is meaningless."  *Id.*  By analogy, it was procedural

26 error for the ALJ in this case to ask the VE to assume a capacity that did not match Coelho's

27 RFC finding.

28

**United States District Court**
For the Northern District of California

15

United States District Court

For the Northern District of California

1    The Court, however, holds the ALJ's error is harmless, because the VE, in contrast to

2    the VE in *Gallant*, identified a job that exists in substantial numbers in the national economy

3    that Coelho can perform. *See Gallant*, 753 F.2d at 1456 (holding the VE's testimony did not

4    constitute substantial evidence to support the ALJ's finding "because neither the hypothetical

5    *nor the answer* properly set forth all of [the claimant's] impairments") (emphasis added).

6    "[W]e have only found harmless error when it was clear from the record that an ALJ's error was

7    'inconsequential to the ultimate nondisability determination'. . . ." *Robbins v. Social Sec.*

8    *Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout*, 454 F.3d at 1055-56).  Here, the VE

9    stated that Coelho could be a table worker, DOT 739.687-182, an occupation which matches

10   Coelho's RFC because it only requires Level 1 reasoning and is a sedentary job. *See* 2 U.S.

11   Dep't of Labor, *Dictionary of Occupational Titles*, 774 (4th ed. 1991); 20 C.F.R. § 416.967(a)

12   ("Sedentary work involves lifting no more than 10 pounds at a time").  The table worker

13   position is also one that exists in substantial numbers in the national economy, with 400,000

14   jobs nationally and 40,000 in California.  (AR at 471.)  All that is required for a nondisability

15   finding at step five is a single job that exists in substantial numbers that the claimant can

16   perform. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a

17   significant number of jobs (in *one* or more occupations) having requirements which you are

18   able to meet. . . .") (emphasis added).  Because Coelho could be a table worker, any error the

19   ALJ committed with his hypothetical is "inconsequential" to his ultimate finding of

20   nondisability. *See Robbins*, 46 F.3d at 885.

21          The ALJ committed procedural error when he presented a hypothetical assumption to

22   the VE that misrepresented Coelho's RFC.  However, this error is harmless because Coelho is

23   able to perform a job that exists in substantial numbers in the national economy.

**CONCLUSION**

24

25          For the foregoing reasons, the Court HEREBY DENIES Coelho's motion for summary

26   judgment and GRANTS the Commissioner's cross-motion for summary judgment.  A separate

27   judgment shall issue, and the Clerk is directed to close the file.

28

16

**United States District Court**
For the Northern District of California

1

**IT IS SO ORDERED.**

2   Dated:   August 10, 2011

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17